## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ANTHONY J. QUARTARONE,  )
Individually, and ANTHONY J.  )
QUARTARONE, as next of friend of  )
MARIO QUARTARONE, a minor,  )        C.A. No.  04-380 (SLR)
                              )
      Plaintiffs,  )
                              )
      v.  )
                              )
KOHL'S DEPARTMENT STORES, INC.  )
a Delaware Corporation.  )
                              )
      Defendant  )


## PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT


GARY W. ABER (DSB #754)
Aber, Goldlust, Baker & Over
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE  19899
302-472-4900
Attorney for Plaintiff


DATED:  April 18, 2005

# TABLE OF CONTENTS

**Page No.**

TABLE OF CITATIONS      3

NATURE AND PROCEEDINGS      5

STATEMENT OF RELEVANT FACTS      6

ARGUMENT

I.     ON A MOTION FOR SUMMARY JUDGMENT WHERE
THERE IS A FACTUAL CONFLICT, SUMMARY JUDGMENT
IS INAPPROPRIATE.      10

II.     THERE ARE ISSUES OF FACT, WHICH PRECLUDE
SUMMARY JUDGMENT ON THE STATE CLAIM OF
MALICIOUS PROSECUTION.      12

III.     THE PLAINTIFF HAS PRESENTED THE ELEMENTS
NECESSARY TO SUSTAIN A JURY ISSUE FOR A
CLAIM UNDER *42 U.S.C. §1981*.      18

CONCLUSION      21

# TABLE OF CITATIONS

**Page No.**

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242, 248, 106 Sct. 2505, 2510
    91 L.Ed.2d 202 (1986)      10

Chipollini v. Spencer Gifts, Inc.
    814 F.2d 893, 896 (3d Cir. 1987)    10

Cluley v. Elkton Realty Company
    179 A.2d 93, 97 (Del.Supr. 1962)    17

Estate of Amos v. City of Page Arizona
    257 F.3d 1086    18, 19

Finch v. Hercules, Inc.
    865 F.Supp. 1104, 1117 (Del. 1994)    10

Fox v. Fox
    729 A.2d 825, 829 (Del.Supr. 1999)    12

Goodman v. Mead Johnson & Co.
    534 F.2d 566, 573 (3d Cir. 1976)    10

Greenhouse v. Duncan Village Corp.
    184 A.2d 479 (Del.Super 1962)    12

Hampton v. Dillard's Department Store, Inc.
    247 F.3d 1091 (10th Cir. 2001)    18

Hankins v. Temple University
    829 F.2d 437, 440 (3d Cir. 1987)    11

In Re: Unisys Savings Plan Litigation
    74 F.3d 420, 433 (3d Cir. 1996)    11

Kodak Co v. Image Technical Services, Inc.
    504 U.S._, 112 S.Ct. 2072
    119 L.Ed.2d 265 (1992)    10

LaRocca v. Precision Motor Cars, Inc.
    45 F.Supp.2d 762 (D.NEB. 1999)    18

Lewis v. J.C. Penny Co.
    940 F.Supp. 367 (D.Del. 1996)    19

Nwakpuda v. Falley's Inc.
    14 F.Supp.2d 1213 (D.Kan. 1998)

Reeves v. Sanderson Plumbing
    530 U.S.133, 120 S.Ct. 2097
    147 L.Ed.2d 105 (2000)                                        11, 15

St. Mary's Honor Center v. Hicks
    509 U.S. 502, 511, 113 S.Ct. 2742
    125 L.Ed.2d 407 (1993).                                        15

Sheridan v. E.I.DuPont De Nemours & Co.
    100 F.3d 1061, 1067-1068 (3d Cir. 1996)                        11

Stidham v. Diamond State Brewery, Inc.
    21 A.2d 283 (Del.Super. 1941)                                  14

Taylor v. Wolhar and Moore, P.A.
    1985 WL 552278 (Del.Super. 1985)                               17

Wilson v. Draper King Cole, Inc.
    196 WL 3638 (Del.Super. 1986)                                  12, 14

## NATURE AND STAGE OF THE PROCEEDINGS

A complaint in this matter was filed in the Superior Court of the State of Delaware in and for New Castle County (A-1) on March 12, 2004. On June 16, 2004 a Notice of Removal (Dk-1) was filed on behalf of the defendant accompanied by an Answer (Dk-2)(A-5). The parties have exchanged written discovery. Because of inadequate responses and late responses to discovery, the plaintiff has filed a Rule 56(f) motion (Dk-23).

The defendant has filed a motion for summary judgment (Dk-21), and this is the plaintiff's answering brief in opposition to that motion.

## STATEMENT OF FACTS

On March 9, 2002, the plaintiff Anthony Quartarone, the owner and general manager of "Kiss 101.7" radio station, and his son, Mario Quartarone went shopping to buy a specific type of sneakers that his son wanted (Quartarone 110, A-42)[1]. They had visited several stores in the North Wilmington area, at the Concord Mall, Boscovs, Sears, and Target (Quartarone 110, 132-133, A-42, A-58). None of the stores had shoes they wanted. As he was leaving the Concord Mall, he saw the Kohl's Store (Quartarone 111, A-43), and although he had never been in the Kohl's store before (Quartarone 111, A-43), he decided to look there. They found the shoes they wanted on a display (Quartarone 112, A-44), and tried to get a salesperson to help measures his son's feet, but they were ignored (Quartarone 112-113, A-44-45). He ended up having to try and measure his son's feet himself. The foot measure read size 10, which was too big (Quartarone 113, A-45). Eventually he found a children's shoe sizer, which gave him the proper shoe size (Quartarone 114, A-46).

After deciding to purchase the shoes, and putting the shoes on his son, he son, who was eight (8) years old did not want to part with the old shoes (Quartarone 117, A-47). Mr. Quartarone wanted to lose the shoes (Quartarone 117, A-47), but there were no trash bins in the department (Quartarone 117, A-47). In other stores they had shopped, sales representatives had asked the child if they wanted to wear the new shoes out, which he did in this case (Quartarone 117, A-47), and he wanted to discard the old sneakers, since the old shoes did not fit (Quartarone 118, A-48). He initially put the old shoes in the shopping cart (Quartarone 117, A-47), later, he took the old shoes out of the cart and looked for a place to put them so his son could not find them (Quartarone 117, A-47).

---

[1] References are by the name of witness and transcript page numbers as they appear in the appendix. By both the transcript page number and appendix reference A-  .

After getting rid of the shoes, he then went to the men's clothing department to try on a pair of jeans (Quartarone 119, A-49). While he was shopping, his son kept running around with the cart the new shoes on (Quartarone 119-120, A-49-50). He then went to the cashier to pay by check (Quartarone 120, A-50). At that time he was asked to give Kohl's his driver's license, which he did (Quartarone 120, A-50). During the time he was at the cashier, his son was asking him to go look at the jewelry counter to purchase a "talking watch" (Quartarone 120, A-50). He paid for his other purchased by check in the amount of $171.95, which check had his name, address and telephone number written on it (A copy of the check to pay Kohl's appears at A-11).

After paying for his purchases, he went to the men's cologne department, and after shopping there for a short period of time decided to leave (Quartarone 120, A-50). At this point he had forgotten that his son was still wearing the new shoes (Quartarone 120, A-50). As he was leaving the store he was stopped by a guard who had a gun pointed at him (Quartarone 121, A-51).

When Mr. Quartarone entered the store, the security officers thought he had been in the store before, because he was wearing a "Kiss 101.7" FM (radio station jacket ) (Twisler 38, A-38). Someone else wearing a "Kiss 101.7" jacket had stolen merchandise and had left tags for the merchandise outside the store once before. (Twisler 38, A-38). However, there were no pictures of Mr. Quartarone from the previous visit, nor was there any video of him from the previous visit (Twisler 38-39, A-38-39). It was also recalled that the individual who had previously been suspected of shoplifting was wearing a "Kiss 101.7" jacket was Hispanic (Twisler 39, A-39), the same race label applied to Mr. Quartarone (Twisler 39, A-39.

The Kohl's Department Store operated by the defendant, had an extensive camera surveillance system (Twisler 16, A-35). When Mr. Quartarone came into the store it was noticed

7

that he was wearing a black leather jacket emblazoned on the back of the jacket, the call letters and name of the "Kiss 101.7" radio station (Twisler 32, A-37). The store security recalled that there had been a previous Hispanic male with a "Kiss 101.7" jacket who had been suspected of shoplifting (Twisler 39, A-39).    Mr. Quartarone was immediately placed under constant surveillance (Markson 17, A-17). For the next two and a half hours, he, his Hispanic companion, son, and a black male were the only individuals who were surveiled by the store (Markson 35-36, A-20-21, Gary Aber Aff'd., A-13).

Mr. Quartarone, his son, and companion were then taken to the security office, which was accomplished without any problems (Twisler 29, A-36), and Quartarone was fully cooperative (Markson 30, A-19). When he was taken back to the security office, he was asked for his driver's license, which he gave to the security officers, and he also allowed a picture to be taken of himself (Quartarone 122-123, A-53-54). Mr. Quartarone kept asking what was wrong and nobody would tell him until finally somebody pointed to his son's feet (Quartarone 123, A-54). At that point he had realized that he had forgotten to pay for his son's shoes (Quartarone 124, A-55). He immediately recognized his mistake and stated that he had made a mistake (Twisler 29, A-36). The store employee inspected his license, noticed that he was originally from the Bronx, and stated that he probably had a record (Quartarone 124, A-55).

Originally, the store's intention was not to prosecute (Markson 30, A-19). However, nce they sat in the store for 45 minutes waiting for a call from the supervisor (Quartarone 125, A-56), Quartarone began to become upset (Markson 43, A-22). At that point Mr. Quartarone demanded that the police be called (Quartarone 125, A-56), Quartarone had to ask the police to be called two or three times (Markson 70, A-26), before it was done. This is unusual, and security personnel never expect the shoplifter to want to call for the police (Markson 70, A-26). Mr.

Quartarone was described as becoming less cooperative (Markson 43, A-22). Eventually Mr. Quartarone was held at the store for two and a half hours (Quartarone 126, A-56).

According to Kohl's policies, normally, in order for there to be a charge of shoplifting, Kohl's standards require actual concealment of the stolen items (Markson 53, A-25). It was conceded however that Mr. Quartarone never attempted to conceal the shoes, since they were on his son's feet.    After the police were called, Mr. Quartarone was arrested and charged with shoplifting (Complaint ¶14, A-3). It was eventually tried in the Court of Common Pleas of New Castle County, State of Delaware (Complaint, ¶18, A-3).

A trial in this matter was held in a bifurcated fashion on December 10, 2002 and February 4, 2003. At the conclusion of the presenting of evidence, Judge John K. Welch, of the Court of Common Pleas found the defendant Not Guilty (T-154, A-60). The charge against the defendant was a violation of *11 Del.C. §84(e)(1)* (T-154, A-60). The Court felt that it had to decide whether or not Mr. Quartarone took the shoes with an intent to appropriate or deprive Kohl's of them without paying. The Court rejected Kohl's security officer's testimony that people couldn't make a mistake. The Court concluded that Mr. Quartarone believed that since other merchandise establishments honor the customer's request or allow the customer to discard old shoes when new ones were purchased, he was merely acting in conformance with a generally accepted custom. The Court also accepted Mr. Quartarone's testimony that he had been in the store for an hour shopping and just forgot about the shoes that his son was wearing, and thus the Court came to the conclusion that Mr. Quartarone had simply made a mistake and found the defendant's testimony to be credible (Quartarone 154, A-60).

## ARGUMENT

### I.   ON A MOTION FOR SUMMARY JUDGMENT WHERE THERE IS A FACTUAL CONFLICT, SUMMARY JUDGMENT IS INAPPROPRIATE.

Summary Judgment is governed by <u>Federal Rule of Civil Procedure</u>, Rule 56.  Under this rule, summary judgment may be ordered only when

> "...the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56, <u>Federal Rules of Civil Procedure</u>.

The Supreme Court has determined that a genuine issue of fact exists "...if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The burden of proving that there is no issue of material fact remains at all times with the party moving for Summary Judgment, here the Defendant, even if that party would not have the burden of proof at trial. <u>Finch v. Hercules, Inc.</u>, 865 F.Supp. 1104, 1117 (D. Del. 1994) citing <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 896 (3d Cir. 1987) <u>en</u> <u>banc</u>, <u>cert.</u> <u>denied</u>, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

At this stage of the proceedings the Court must examine all the evidence, including all inferences to be drawn from the underlying facts, in the light most favorable to the non-moving party.  <u>Finch</u> at 1118, citing <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976), <u>cert</u> <u>denied</u>, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).  Furthermore, if there is any dispute concerning issues of material fact, the non-moving party's version of the disputed facts, here Mr. Quartarone's must be presumed correct.  <u>Kodak Co. v. Image Technical Services, Inc.</u>, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).  Even where certain facts are undisputed "...summary judgment may not be granted where there is disagreement over

inferences that can be reasonably draw from those facts." In Re: Unisys Savings Plan Litigation, 74 F.3d 420, 433 (3d Cir. 1996). It remains the province of the fact finder to resolve any issues of believability and the weight of the evidence. Id., at ftn. 10. Here, the plaintiff is to receive the benefit of the doubt whenever his assertions conflict with those of the defendant's and have all inferences drawn in his favor. Id., at ftn. 10.

These standards have been reiterated and strengthened by the Supreme Court in its holding in Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). There, it was ruled that Courts "...must draw all reasonable inferences in favor of the non-moving party, and it may not make credibility determinations or weigh the evidence." Id. at 2110. In doing so, the Supreme Court has recognized that the Third Circuit's decision in Sheridan v. E.I. duPont de Nemours & Co., 100 F.3d 1061 (3d Cir. 1996) required evidence of pretext to be submitted to a jury, Reeves at p.2105. In Sheridan, the Third Circuit stated that it remains a jury function to determine the credibility of the proffered reasons for an employer's actions, since:

> "A jury must perform the traditional functions of assessing the weight of the evidence, the credibility of the witnesses, through observation of both direct testimony and examination at trial, and the strength of the inferences that can be drawn from the elements of a prima facie case, and the evidence that undermines the employer's proffered reasons for its actions. This is uniquely the role of a fact finder, not the Court." Sheridan v. E.I. duPont de Nemours & Co., supra. at p.1072.

Thus, the Court's role at this stage of the proceedings is, after reviewing all the facts, and inferences to be drawn there from, in a light most favorable to the plaintiff, whether there exists sufficient evidence, by which a reasonable jury could conclude that Kohl's maliciously prosecuted Anthony Quartarone. Hankins v. Temple University, 829 F.2d 437, 440 (3d Cir. 1987).

II.    **THERE ARE ISSUES OF FACT, WHICH PRECLUDE SUMMARY JUDGMENT ON THE STATE CLAIM OF MALICIOUS PROSECUTION.**

At the outset, it has to be remembered that this stage of the proceedings is one of the defendant's attempt at obtaining a summary judgment. That position taken by the defendant, prevents a review of the facts of the case, while assuming that all facts have to be decided in favor of the plaintiff's point of view. Nevertheless, at this stage of the proceeding, under the state law applicable to claims of malicious prosecution, the plaintiff is not required to establish all of the elements of the claim of malicious prosecution at the summary judgment stage, but rather, need only show the existence of genuine issues of material fact. *Wilson v. Draper King Cole, Inc., 196 WL 3638 (Del.Super. 1986)*(Appearing in the Appendix at A-63).

The defendant relies upon the exculpatory clause contained in *11 Del.C. §840(d)* that allows a merchant to be free of any potential criminal or civil liability "...for such detention or rest, provided they had at the time of such detention or arrest probable cause to believe that the person had committed the crime of shoplifting...". As shown below, there is reason by which a jury could conclude that the defendant did not have probable cause to believe that shoplifting had occurred. More importantly, however, the rules of common law allow the plaintiff herein to bring a claim for malicious prosecution. The cited statutory language, relied upon by the defendant, is in derogation of the common law, and seeks to restrict rights, which the plaintiff would otherwise have under the common law. A statute which limits or is in derogation of the common law must be strictly construed. *Greenhouse v. Duncan Village Corp., 184 A.2d 479(Del.Super 1962)*. A statute enacted in derogation to the common law is subject to strict construction, and claims not expressly invalidated by the statute survive and remain viable. *Fox v. Fox, 729 A.2d 825, 829 (Del.Supr. 1999)*.

The cited statute protects a defendant only for claims arising from the detention or arrest. The plaintiff here does not challenge the defendant's right to detain him or to question him about his actions in attempting to hide his child's shoes. However, once it was realized by the defendants that he had given a check with his name address and telephone number on it to the store, and all the facts surrounding the situation, and that the realization that a simple mistake had been made, should have been obvious to the defendants. It is the continued prosecution of the plaintiff after presenting such facts to them that is here claimed to be improper. The statutory protection sought by the defendant does not exist, since it does not protect against claims for false prosecution. There is a significant difference between deciding to arrest someone, and to thereafter actually prosecute them for the originally suspected crime. It is suggested that many persons are stopped on suspicion of shoplifting who are actually innocent, and thus there is a significant difference between the level of responsibility of arresting someone and that of both arresting and proceeding against them criminally.

Generally there are six (6) essential elements for an action of malicious prosecution as follows:

1.    A prior institution of judicial proceedings against the plaintiff.

2.    The former proceedings must be by, or at the insistence of the defendant.

3.    The former proceedings must have terminated in favor of the plaintiff herein, the defendant therein.

4.    There must have been malice in the institution of the former proceeding.

5.    There must have been a want of probable for the institution of such proceedings.

6.    There must have been injury or damage resulting to the plaintiff from the former

13

proceedings.  *Stidham v. Diamond State Brewery, Inc. 21 A.2d 283 (Del.Super. 1941)*

All of the above-cited elements are present.  There is no question that there was a prior institution of proceedings against the plaintiff, being the criminal actions, which were tried on December 10, 2002, and February 4, 2002, a claim admitted by the defendant (Complaint and Answer, ¶16, A- 3, A-6).

The defendant herein disputes that the second element can be present, claiming that the criminal proceedings were brought by the State of Delaware, and not by the defendant. However, at least under Delaware jurisprudence, even where a defendant does not make the formal charge, a party who brings about a criminal proceeding may be liable if he advises or assists the government to bring the proceeding, or otherwise ratifies it when it has begun, or takes an active part in directing or aiding in the conduct of the case. *Wilson v. Draper King Cole, Inc., supra, at p. 3.*  As the Delaware Courts have stated:

> "One is deemed to have initiated the proceeding if 'his direction request or pressure of any kind by him was the determining factor in the officer's decision to commence the case' *Zenk v. O'Brien (Conn. Super) 79 A.2d 769 1951".  Wilson v. Draper King Cole, supra, at p. 3.*

It is without question that the proceedings brought at the instance of the defendant was terminated in favor of the defendant and that he was found to be not guilty (T-154, A-60).

The fourth element required, malice, is also present.  The element of malice in a claim of a malicious prosecution does not require a showing of spite, ill will or grudge. *Stidham v. Diamond State Brewery, Inc., 21 A.2d 283 (Del.Super. 1941).*  Malice may exist where the prosecution of a suit is done for a wrongful or improper purpose. *Id.*  It exists where the prosecution's primary purpose is other than bringing the offender to justice. *Wilson v. Draper-King Cole, Inc. 1986 WL 3638, p. 3 (Del. Super. 1986).*  In a case dealing with racial

14

discrimination, such as a claim under *42 U.S.C. §1981*, a discriminatory purpose would seem to be evidence of malice. Discrimination can be found not only by direct evidence, but also by indirect evidence. Where a fact finder disbelieves reasons advanced by a defendant, then discrimination can be inferred. *Reeves v. Sanderson Plumbing Pools, Inc., 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 150 (2000).* Indirect proof of discrimination based upon disbelief of the advanced reasons is especially true, where, when coupled with the elements of a prima facie case, there is evidence of mendacity on the part of the defendant. *Id.* (citing *St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993)).* In the present case, the jury could well believe, in light of the notation on the report of the incident furnished by the defendant, that he was Hispanic, and their reliance upon the fact that he was wearing a jacket emblazoned with call letters of a minority oriented radio station, "KISS "101.7" that racial prejudice was a factor. This is especially true, because in the present case there is other evidence of mendacity by the defendant.

First it is clear, that the defendant has evaded proper discovery procedures in this litigation. The plaintiff sought through legitimate means the production of relevant documents, including copies of any reports or other writings, which describe the alleged wrongdoing. The defendant, for the initial five (5) months of this litigation refused the production of **any documents**, and finally produced, after the close of discovery, the single page document entitled "Case Report". (A-10) However, the sworn testimony by store personnel indicates that all the persons involved in the apprehension of the plaintiff, wrote reports (Twisler 55, A-40). For instance, there was a report written by one employee, Jena Arena (Twisler 57, A-41), that has never been produced. Also, another individual named Jesus Colon wrote a report (Markson 57,

A-41). It also has to be assumed, based upon testimony, that Twisler and Markson each wrote reports. None of those reports have been produced.

Perhaps, even more damaging to the defendant is that the one page "Case Report" (A-10) that they have furnished may not be the original report, but something written for this litigation. The basis for such a statement is found in the time set out in the report. If the times in the report are correct, the plaintiff was not apprehended by the store personnel until 5:50 p.m., and had left the security office by 6:30 p.m., thus according to the report he was held for less than an hour, from ten minutes before six until 6:30 (17:50 until 18:30), or for only forty (40) minutes. However, the sworn testimony from Mr. Markson at the criminal trial, was that he was held for 45 minutes before the police were called, (Markson 125, A-32), and he was held in the store for a total period of two and a half hours (Markson 126, A-33).

This described concealment of evidence, and possible fabrication of a document is more than sufficient evidence by which a reasonable jury could conclude improper purpose by the defendant and discriminatory animus, malice and an attempt to deceive this court.

The fifth required element is there would not have been probable cause for the institution of the former proceedings. It was recognized that when Mr. Quartarone was first seized by the defendants, there was no intent to prosecute. It was only when he insisted that the police be called that resulted in the prosecution. The record is also devoid of any evidence that the defendants informed the police, before they allowed Mr. Quartarone to be prosecuted of all of the facts, that is, that he believed the mistake had been made, that he had given the store his name, address, and telephone number at the time of purchase, not the usual conduct of someone trying to steal from a store, and thus there was significant evidence that it was truly a mistake. The failure to make a full disclosure of all the relevant facts, may well deprive a party, if he is

16

later charged with malicious prosecution, of the defense of lack of probable cause. *Chuley v. Elkton Realty Company, 179 A.2d 93, 97 (Del.Supr. 1962)*. That is , as the *Chuley* Court held before a person undertakes to criminally prosecute another, he has to use care to acquire all the facts and he is obligated to use due care in determining whether the facts stated actually constitute a criminal charge *Chuley, supra, at p. 98*. If a person who brings about a criminal charge withholds fact that are known to him, which might effect the institution of the claim, he cannot later rely on a claim of lack of probable cause. *Id*. The failure to present all the facts to the governmental body, which would result in a criminal charge gives rise to a factual question, that must be normally resolved by a jury. *Taylor v. Wolhar and Moore, P.A., 1985 WL 552278 (Del.Super 1985)*(A-61).

The final element that is required to be shown is the presence and occurrence of damage. In this case, as a result of the criminal prosecution of the plaintiff, he incurred substantial legal fees amounting to over $11,000 (A-12). In addition, as claimed in the complaint, the plaintiff has suffered pain and humiliation as a result of the actions of the defendant (Complaint, ¶22, A-3).

In view of the fact that the facts in this matter demonstrate that a reasonable jury could find all of the elements for a claim of malicious prosecution present, summary judgment on that count should be denied.

### III.  THE PLAINTIFF HAS PRESENTED THE ELEMENTS NECESSARY TO SUSTAIN A JURY ISSUE FOR A CLAIM UNDER *42 U.S.C. §1981.*

A claim, originating in a false or malicious prosecution is sufficient to sustain a claim under *42 U.S.C. §1981, Hampton v. Dillard's Department Store, Inc., 247 F.3d 1091 (10th Cir. 2001).* The elements of such a claim are:

1.  The plaintiff is a member of a protected class.

2.  The defendant had the intent to discriminate on the basis of race.

3.  The discrimination interfered with a protected activity defined in *§1981. Id., at* p1102.

The first issue of course is whether the plaintiff is a member of the protected class. While the plaintiff in this case is a Caucasian, of Italian American descent, the defendant had arrested him solely on the basis that they considered him Hispanic. The testimony in this matter was that an earlier Hispanic male wearing a "Kiss 101.7" jacket had been found to have shoplifted, and Mr. Quartarone coming into the store wearing a similar jacket was thought to be Hispanic and was thus arrested. These facts satisfy the first element.

In *LaRocca v. Precision Motor Cars, Inc., 45 F.Supp.2d 762 (D.NEB. 1999),* another court was faced with the same issue as to whether or not an Italian American, might appear to be a member of a protected minority would be protected by the statute. In *Estate of Amos v. City of Page, Arizona, 257 F.3d 1086,* it was held that discrimination against an individual believed to be a Native American would be protected although the victim of the discrimination was actually white. The Court specifically held: "That (the plaintiff) was actually white does not make the discrimination or its resulting injury less direct." The Court held that the plaintiff would be viewed as perceived by the defendants, a member of a minority group, and not as he actually was

18

a white individual. "The City's alleged discrimination is no less malevolent because it was based upon an erroneous assumption". *Id.* More specifically in *LaRocca v. Precision Motors, Inc., 45 F.Supp.2d 762 (D.Neb)*, an Italian American was allowed the protection of *42 U.S.C. §1981*, where he was mistaken to be of Hispanic origin. In the present case, the plaintiff was apparently mistaken to be of Hispanic origin and that factor played a significant role apparently in the decision to detain and/or prosecute him.

The third and final element of a *§1981* claim is that the discrimination interfered with a protected right.

The provisions of *42 U.S.C. §1981* provide:

> "All persons within the jurisdiction of the United States shall have the same right in every state and territory to **make an enforced contract** to sue, be parties, give evidence, and to the full and equal protection of laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to the punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other. (Emphasis Added).

It is suggested that the ability to make a commercial contract to purchase goods is an illusory right if it is coupled with the burden of being harassed, arrested, and maliciously prosecuted. To allow an individual to purchase goods, under the pain of criminal prosecution is not a right or privilege at all. The right to be free from malicious prosecution is something more than the general right to engage in commercial commerce. *42 U.S.C. §1981*, has been recognized as the basis of a claim for relief, where a member of a protected class is falsely accused of shoplifting. *Nwakpuda v. Falley's Inc., 14 F.Supp.2d 1213 (D.Kan. 1998)*. The plaintiff recognizes that this position may vary from that recognized in *Lewis v. J.C. Penny Co., Inc., 940 F.Supp. 367 (D.Del. 1996)*, in which the Court rejected a similar claim based upon the claimed existence of an unstated unwritten contract between a commercial establishment and the public, that all who enter the premises will be treated equally regardless of race. Such a position,

involving individuals who merely had their bags searched and was thus a less vicious and less onerous burden than here placed against the plaintiff, where he was criminally prosecuted based on facts that were clearly a result of an inadvertent mistake.

The defendant's claim for summary judgment on the *42 U.S.C. §1981,* claim should be rejected.

## CONCLUSION

For the reasons stated herein, and in light of the following conduct of the defendant, described in plaintiff's Rule 56(f) motion, summary judgment should be denied:

ABER, GOLDLUST, BAKER & OVER


_____/s/ Gary W. Aber_____
GARY W. ABER (DSB #754)
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899
(302) 472-4900
Attorney for Plaintiff

DATED: April 18, 2005